UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | |
|---|---|
| ANTHONY GLEN WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, ACTING )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | Civil Case No.<br>7:13-cv-98-JMH<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 9, 12] on Plaintiff's appeal of the Commissioner's denial of his application for disability and disability insurance benefits. [Tr. 9-27].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will grant Plaintiff's motion and deny Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

   1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

   2. An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 15]. Under step two, the ALJ found that Plaintiff's medically determinable impairments of cervical strain, degenerative disc disease of the

2

lumbar spine with right lower extremity radiculopathy, history of left tibia and fibula fracture, osteoarthritis, major depressive disorder, generalized anxiety disorder, and pain disorder were "severe" as defined by the agency's regulations. [Tr. 15]; 20 CFR §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's impairments of hypertension, GERD and stomach problems, and allergies were "non-severe" impairments. [Tr. 16]. Additionally, the ALJ found Plaintiff's allegations of seizures not to be a medically determinable impairment. [Tr. 16].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app.1. [Tr. 16-18]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work as defined in C.F.R. 404.1567(a). [Tr. 18]. Additionally, the ALJ found that Plaintiff requires the ability to alternate between sitting and standing at his discretion, can do no overhead work, can frequently handle and finger, can occasionally bend and stoop, can never climb, can understand, remember, and carry out simple instructions, can deal with changes in a routine work environment, can occasionally interact with the public, and can frequently interact with coworkers and supervisors. [Tr. 18].

3

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 21]. However, there were jobs in the national and regional economies that Plaintiff could perform. [Tr. 21]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 22].

In this appeal, Plaintiff argues that the ALJ erred when he adopted the RFC from Plaintiff's earlier application for disability benefits and that the ALJ failed to present an accurate hypothetical question to the vocational expert.

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff previously filed an application for a period of disability and disability insurance benefits on January 21, 2010 and was denied benefits on September 20, 2011. [Tr. 12]. Plaintiff did not appeal this decision. [Tr. 12]. The ALJ found that this previous determination was res judicata, and, thus, that Plaintiff's application was for benefits from September 21, 2011 to the date of the decision. [Tr. 12-13]. Plaintiff filed for a period of disability and disability insurance benefits under Title II alleging disability beginning on September 21, 2011. [Tr. 12]. The claims were denied both initially and upon reconsideration. [Tr. 12]. Plaintiff requested a hearing with the ALJ, which took place on May 14, 2013. [Tr. 12]. The ALJ issued an unfavorable decision denying disability insurance benefits on May 24, 2013. [Tr. 22].

Plaintiff was thirty-five years of age on the alleged disability date [Tr. 21]. Plaintiff started, but did not complete the eighth grade. [Tr. 39]. Plaintiff has past work experience as a steamer cleaner, dump truck driver, construction worker, construction truck driver, and a timber cutter in a sawmill. [Tr. 21].

5

According to Plaintiff, his neck and back hurt all the time. [Tr. 33]. Plaintiff claims that the pain begins in his neck and radiates down through his legs, and he always has a headache. [Tr. 33]. Plaintiff claims his neck remains stiff and he has muscle spasms in his back and shoulders. [Tr. 188]. Plaintiff testified that he broke his left leg in seven places and that it was repaired using rods and pins. [Tr. 36]. Plaintiff testified that the left leg hurts all the time and swells if he stands too long or rides in a vehicle. [Tr. 36]. Plaintiff treats his problems with Lortab, Cymbalta, Prilosec, and Claritin D. [Tr. 189]. Plaintiff also has a TENS unit, but claims that it no longer helps. [Tr. 34-35].

Plaintiff visited the Allen Family Clinic on October 20, 2009, claiming that a tree branch fell and struck Plaintiff in the low back. [D.E. 332]. Plaintiff alleges that this injury led to the pain of which he now complains. *See* [D.E. 190]. Plaintiff made additional visits to the Allen Family Clinic following the initial injury. Plaintiff visited on November 3, 2009 and was treated for lumbago, mid-back pain, and radiculopathy. [D.E. 329]. On November 9, 2009, he was treated for lumbago and mid-back pain. [D.E. 326].

Plaintiff was regularly treated at St. Claire Regional Hospital in Morehead, Kentucky. [Tr. 254-64]. On May 2, 2011, Plaintiff was diagnosed with chronic neck pain, myofascial pain

6

syndrome, chronic low back pain with radiation into the right hip, right sacroiliac joint dysfunction, right piriformis syndrome, and facet arthropathy. [D.E. 257]. At this time, Plaintiff was prescribed a TENS unit, and was scheduled for a right hip injection and trigger point injections. [D.E. 257].

Plaintiff was also treated by the Frederick Medical Clinic. [D.E. 265-71]. At various points of his treatment, Plaintiff presented with severe back pain, numbness and tingling, depression and anxiety [D.E. 266]; GERD and neck pain [D.E. 267]; allergies [D.E. 268]; insomnia [D.E. 269]; low back pain/lumbago [D.E. 299]; and pain in the lower leg joints. [D.E. 300-01].

Also during this time period, Plaintiff was treated by Dr. Melanie Ledford of Morehead Medical Specialists. Plaintiff visited Dr. Ledford, on November 30, 2011, for right low back pain, right neck pain, and requested trigger point injections. [D.E. 272]. On November 7, 2011, Plaintiff visited complaining of low back pain, bilateral shoulder pain, and neck pain. [D.E. 274]. At this time, an MRI was ordered. [D.E. 274]. Plaintiff again saw Dr. Leford in January 2012, complaining of pain in the neck, low back, and right leg. [D.E. 281].

An MRI of Plaintiff's lumbar spine on November 18, 2009 revealed a right paracentral L4-5 disc protrusion with mild bilateral neural foramina encroachment related to lateral

7

bulging of the disc and hypertrophic face joint change, localized central disc protrusion L5-S1 with a mild degree of bilateral neural foramina encroachment related to lateral bulging of the disc and hypertrophic facet joint change, minimal diffuse bulging of the disc at L3-4, and there was no disc herniation or high grade spinal stenosis at any visualized level. [D.E. 339]. An MRI of the thoracic spine showed minimal disc bulging at the T5-6 and T6-7 with no disc herniation and there was no focal thoracic spinal cord abnormality or high grade spinal stenosis. [D.E. 340].

Vocational expert Anthony Michael testified at the hearing before the ALJ. [Tr. 41-43]. Mr. Michael testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff would not be able to return to Plaintiff's past work. [Tr. 42]. However, Mr. Michael determined that there were jobs in the relevant economy that someone with that RFC assessment could perform. [Tr. 42]. Mr. Michael found that there would be no jobs in the national economy if an individual was limited to sedentary work and during an eight-hour day could stand or walk a total of two hours, only sit for four, and needs a sit/stand option at will throughout the day. [Tr. 42-43].

Plaintiff testifies that he sometimes can sit for 40 minutes to an hour and can stand for 15 to 20 minutes. [Tr. 36-37]. Plaintiff has a driver's license, but testified that he no

longer drives. [Tr. 37]. Plaintiff testified that he typically gets two hours of sleep a night and gets four hours on a good night. [Tr. 38]. Plaintiff used to ride four-wheelers, camp, fish, and ride horses, but he is no longer able to do those activities. [Tr. 39-40]. Plaintiff is mostly able to maintain his personal hygiene, but sometimes cannot put on his shoes and socks or shave. [Tr. 190-191]. According to Plaintiff, he does not cook meals, he can no longer perform household chores, and he no longer does any shopping for the household. [Tr. 191].

**IV. Analysis**

**I. The ALJ did not err when he adopted the RFC limitations from Plaintiff's earlier application for disability benefits.**

Plaintiff contends that the ALJ erred in adopting the findings of the ALJ in an earlier disability determination because additional severe impairments were included in the disability determination now before this Court and the prior RFC finding did not accurately describe Plaintiff.

"In *Drummond v. Commissioner of Social Security*, [the Sixth Circuit] held that 'a subsequent ALJ is bound by the findings of a previous ALJ . . . absent new and additional evidence.'" *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 464 (6th Cir. 2004) (alteration in original) (quoting *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997)). When an initial

9

application has been denied and a subsequent application is filed, *Drummond* requires that, "[i]n the absence of reopening, the ALJ adjudicates the subsequent period, but is bound by relevant factual findings made with respect to the prior period unless there is new and material evidence as to those findings." *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 357-58 (6th Cir. 2013) (citations omitted).

The ALJ in this case adopted the limitations set forth in the September 2011 decision denying disability, but did not fully accept the RFC determination. *See* [Tr. 20] ("The undersigned gives great weight to the residual functional capacity set forth in Judge Patterson's September 2011 decision and adopts these limitations."). Rather, the ALJ included the earlier limitations and, based upon new and material evidence, added additional limitations to the RFC assessment. *Compare* [Tr. 18] (adding additional limitations to the initial RFC assessment), *with* [Tr. 51] (finding the initial limitations on Plaintiff's first application). Thus, the ALJ adopted the relevant factual findings and then, based on a worsening of Plaintiff's conditions, added limitations to Plaintiff's ability to perform sedentary job functions. However, the additional limitations did not require the ALJ to find that Plaintiff could no longer perform sedentary work.

Plaintiff's challenge is similar to one previously rejected by the Sixth Circuit.

> Rather than relying on the prior ALJ's determination regarding [plaintiff's] residual functional capacity in 1999, ALJ Jones then proceeded to review the evidence offered in support of [plaintiff's] 2001 application. While allowing that the new evidence suggested deterioration in [plaintiff's] condition since 1999, the ALJ nevertheless determined independently that [plaintiff] still retained the residual functional capacity to perform sedentary work. . . . The record does not demonstrate that *Drummond* was misapplied.

*Ealy v. Comm'r of Soc. Sec.*, 172 F. App'x 88, 90 (6th Cir. 2006) (internal quotation marks omitted). The case at bar presents the same situation as *Ealy*. The ALJ properly applied *Drummond* by adopting the limitations, and then, upon an independent review of the record, found that Plaintiff suffered from additional limitations due to a worsening of his impairments. Despite the worsening of the impairments, the ALJ found that Plaintiff could still perform sedentary work, and this determination was supported by substantial evidence. *See* [Tr. 63-80; 83-100]. Thus, the ALJ did not err.

**II. The ALJ did not present an accurate hypothetical question to the vocational expert.**

Plaintiff claims that the ALJ erred because he relied upon the testimony of a vocational expert in response to a hypothetical question that did not accurately describe Plaintiff. Specifically, Plaintiff alleges that the ALJ failed

11

to include the moderate limitations to "respond appropriately to changes in a work setting" and to maintain attention and concentration for extended periods of time." [D.E. 9-1 at 8].

When asking a hypothetical question, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted). The limitations the ALJ finds credible must be supported by substantial evidence. *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) ("There is substantial evidence in the record that the two hypothetical questions posed by the ALJ accurately portrayed [plaintiff's] credible limitations."). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citations omitted).

The ALJ explicitly found that Plaintiff was "moderately limited in maintaining concentration, persistence or pace." [Tr. 17]. Because the ALJ explicitly found the moderate limitation, the United States' argument that the ALJ was not required to consider this portion of the state agency psychologist assessment is unavailing. The ALJ did not include this moderate

12

limitation in any of the hypotheticals posed to the vocational expert. [Tr. 41-42; 42-43].

The first hypothetical posed by the ALJ was the only hypothetical containing any mental impairments. *See* [Tr. 41-43]. The first hypothetical included that "[t]he individual can understand, remember and carry out simple instructions; can deal with changes in a routine work setting; can have occasional interaction with the public; and, frequent interaction with coworkers and supervisors." [Tr. 41-42]. This description did not adequately describe Plaintiff's limitations as to concentration, persistence or pace.

> [W]hile finding that Plaintiff has a 'moderate limitation in her ability to concentrate, persist and keep pace,' the ALJ's limitations were with co-workers, supervisors and the public, and to 'jobs entailing no more than simple, routine, unskilled work.' While close, these are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. . . . The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of assembly, packing, and sorting or security guard jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question.

*Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (citations omitted).

As the ALJ explicitly found a moderate limitation in concentration, persistence or pace to be credible, and failed to

13

include it in his hypothetical question to the vocational expert, or the RFC, the ALJ's determination was not supported by substantial evidence. The vocational expert's testimony cannot serve as substantial evidence that Plaintiff can perform other work, and no other evidence on this issue was presented.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 9] be, and the same hereby is, **GRANTED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 12] be, and the same hereby is, **DENIED;**

(3) that the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order.

This the 16th day of April, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

14